Randy Nussbaum (SBN 006417)
Randy.Nussbaum@SacksTierney.com
Philip R. Rudd (SBN 014026)
Philip.Rudd@SacksTierney.com
Sierra M. Minder (SBN 035795)
Sierra.Minder@SacksTierney.com
**SACKS TIERNEY P.A.**
4250 N. Drinkwater Blvd., 4th Floor
Scottsdale, AZ 85251-3693
Telephone: 480.425.2600
Facsimile: 480.970.4610
*Proposed Attorneys for Debtor*

SACKS TIERNEY P.A., ATTORNEYS
4250 NORTH DRINKWATER BOULEVARD
FOURTH FLOOR
SCOTTSDALE, ARIZONA 85251-3693

**IN THE UNITED STATES BANKRUPTCY COURT**

**THE DISTRICT OF ARIZONA**

| | |
|---|---|
| In re:<br><br>CRESTWOOD HOSPITALITY, LLC,<br><br>Debtor. | Chapter 11 Proceedings<br><br>Case No. 4:21-bk-03091-BMW<br><br>**DECLARATION OF SUKHBINDER KHANGURA IN SUPPORT OF FIRST DAY MOTIONS** |

I, Sukhbinder Khangura, hereby declare under penalty of perjury of the laws of the United States of America, as follows:

1. I am an adult resident of Maricopa County, Arizona.

2. I am the manager of Crestwood Hospitality, LLC ("Debtor"), as debtor and debtor-in-possession in the above-captioned bankruptcy case.

3. I am authorized and competent to make this declaration in support of the Debtor's (a) *Motion for Order Authorizing Debtor's Use of Cash Collateral to Pay Operating Expenses and Pre-Petition Real Property and Sales Taxes* ("Cash Collateral Motion"), (b) *Motion to Retain Ledgestone Hospitality, LLC as Manager and Operator of Hotel* ("Motion to Retain Hotel Operator"), (c) *Motion for Order Authorizing Debtor to Pay Pre-Petition Wages* ("Wage Motion"), and (d) *Application to Employ Counsel for the*

*Debtor* ("Attorney Retention Application") (collectively, the "First Day Motions").

4. The statements contained herein are accurate to the best of my knowledge and, unless otherwise indicated, are based upon my personal knowledge. Any legal conclusions contained herein are made based upon my understanding of the law and pertinent circumstances.

5. I have read and am familiar with the First Day Motions and their respective contents.

**General Background Facts**

6. On April 23, 2021 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Arizona.

7. The Debtor owns the Holiday Inn Express at Tucson Mall located generally at 620 E. Wetmore Rd., Tucson, Arizona (the "Hotel").

8. The Hotel was built in 2004 as an "all suite" hotel and currently operates as a Holiday Inn Express® & Suites hotel pursuant to a license agreement with Holiday Hospitality Franchising, LLC ("Franchisor").

9. The Hotel has 105 guest rooms, three corporate meeting rooms, a business center, outdoor heated pool, fitness center and other guest amenities.

10. As of the Petition Date, the Debtor had eighteen employees, although the number of employees fluctuates with the seasons and general employee attrition.

**Facts Supporting the Cash Collateral Motion**

11. Historically, the Debtor has operated profitably. In fact, in 2019, under Ledgestone Hospitality, LLC's ("Ledgestone") management, the Debtor had revenues of approximately $3.2 million (approximately $400,000 more than in 2018) and EBITDA of approximately $1 million.

12. However, in 2017 and 2018, the previous management company that operated the Hotel for the Debtor failed to file returns for, and to pay, Arizona State and City of Tucson sales taxes resulting in a tax liability to the State of Arizona in excess of $1

SACKS TIERNEY P.A., ATTORNEYS
4250 NORTH DRINKWATER BOULEVARD
FOURTH FLOOR
SCOTTSDALE, ARIZONA 85251-3693

million and a tax liability to the City of Tucson of approximately $87,500.

13. In February 2019, after discovering the failure to file sales tax returns, the Debtor removed that previous management company and retained Ledgestone to manage the Hotel. Ledgestone continues to manage the Hotel pursuant to that certain *Management Agreement* dated February 12, 2020 ('Management Agreement") between the Debtor and Ledgestone, and has timely filed returns for, and paid, all Arizona state and City of Tucson sales taxes. A copy of the Management Agreement is attached to the Motion to Retain Hotel Operator as Exhibit "A."

14. Until March 2020, the Debtor had been paying an agreed amount of $22,500 per month to the Arizona Department of Revenue ("ADOR") with respect to the delinquent state sales taxes.

15. Upon the onset of the COIVD-19 pandemic, the Debtor and ADOR agreed to reduce the monthly payments on the delinquent state sales taxes to $2,500 per month and then to $7,500 per month. As of the Petition Date, the Debtor was current on its reduced payment agreement with ADOR.

16. The Debtor has not made payments to the City of Tucson relating to the delinquent sales taxes. The City of Tucson recorded a tax lien on the Hotel relating to the unpaid city sales taxes.

17. Like many industries, the hospitality industry in general, and the Hotel specifically, were significantly adversely affected by the global COVID-19 pandemic, and the Debtor's operations and revenues suffered greatly in 2020 and so far in 2021. In fact, the Debtor's revenues declined by approximately 45% in 2020.

18. While the Debtor is beginning to see improvements in occupancy, it continues to suffer from the impacts of COVID-19.

19. When the Debtor's revenues declined in 2020, the Debtor fell behind in its payments to its primary secured creditor, CIT Bank, N.A., successor by merger to Mutual of Omaha Bank ("CIT").

20. CIT asserts a blanket lien in all of the Debtor's assets, including the Hotel,

SACKS TIERNEY P.A., ATTORNEYS
4250 NORTH DRINKWATER BOULEVARD
FOURTH FLOOR
SCOTTSDALE, ARIZONA 85251-3693

accounts receivable, and equipment, securing a loan in the asserted amount of approximately $6.3 million (the "CIT Loan").

21. On March 12, 2021, CIT delivered a "Notice of Default and Reservation of Rights" letter to the Debtor declaring that the Debtor is in default under the CIT Loan and demanding payment of all amounts due under the CIT Loan.

22. On April 1, 2021, CIT filed a *Verified Complaint* against, among others, the Debtor, in Maricopa County Superior Court (the "State Court"), initiating Case No. CV2021-005316 (the "State Court Action"). In the State Court Action, CIT requested that the Court appoint a receiver to take possession and control of the Hotel.

23. In addition to falling behind in its payments to CIT during 2020, the Debtor also fell behind in its obligations to the Franchisor. However, the Debtor entered into a forbearance agreement with the Franchisor and is current on its obligations to the Franchisor.

24. During 2020, the Debtor took advantage of certain federal programs designed to provide financial relief to small businesses due to the COVID-19 pandemic. Specifically, the Debtor obtained two Paycheck Protection Program ("PPP") loans in the amounts of approximately $127,000 and $178,590.02, respectively, and an Economic Injury Disaster Loan ("EIDL") from the Small Business Administration ("SBA") in the amount of approximately $500,000.

25. The Debtor used the PPP loan funds as required by the PPP. The first PPP loan has already been forgiven and the Debtor is in the process of seeking forgiveness on the second PPP loan.

26. I understand that, in connection with the EIDL, the SBA asserts a lien on the Debtor's personal property and has filed a UCC-1 Financing Statement with respect to such asserted lien. The Debtor intends to repay the EIDL pursuant to the requirements of the EIDL program.

27. In addition to the CIT Loan encumbering the Hotel, I understand that Maxim Commercial Capital, LLC ("Maxim") asserts a lien on the Hotel and the Debtor's personal

SACKS TIERNEY P.A., ATTORNEYS
4250 NORTH DRINKWATER BOULEVARD
FOURTH FLOOR
SCOTTSDALE, ARIZONA 85251-3693

property to secure an alleged equipment lease financing arrangement (the "Maxim Claim"). Maxim has filed a UCC-1 financing statement with the Arizona Secretary of State and has recorded a Deed of Trust in the Pima County Recorder's Office with respect to this alleged obligation. The Debtor disputes the propriety of Maxim's alleged liens.

28. Additionally, I understand that Brycon Corporation ("Brycon"), a construction company that constructed a hotel owned by Legacy Hospitality, LLC ("Legacy"), an entity affiliated with the Debtor's principals, asserts a lien in the Hotel relating to an alleged guaranty by the Debtor of Legacy's purported obligations to Brycon (the "Brycon Claim"). Brycon asserts that the Debtor's guaranty of such obligations is secured by a Deed of Trust encumbering the Hotel. Brycon has not filed a UCC-1 financing statement with respect to the Debtors.

29. Finally, the Debtors have incurred certain equipment loans to various third parties that are secured by purchase money security interests in the equipment purchased by the Debtor with such loan proceeds.

30. The Debtor does not concede (a) the validity, enforceability, extent, amount or priority of the CIT Loan, the EIDL, the Maxim Claim or the Brycon Claim (the "Asserted Secured Claims") or the respective asserted liens allegedly securing the Asserted Secured Claims (the "Asserted Liens"), (b) that the Asserted Liens properly encumber the Debtor's personal property, revenues, income, accounts receivable, work-in-progress, equipment, inventory, or other assets, or (c) that the Debtor's income and proceeds from its accounts receivable, work-in-progress and inventory constitute any party's cash collateral. The Debtor expressly reserves the right to contest any liens or to object to the claims related thereto.

31. As of the Petition Date, the Debtors had approximately $75,000 in accounts receivable due and owing for room rentals. A portion of these receivables are based on a Holiday Inn reimbursable rewards program and should be credited toward the Debtor's franchisee fees owed to the Franchisor.

SACKS TIERNEY P.A., ATTORNEYS
4250 NORTH DRINKWATER BOULEVARD
FOURTH FLOOR
SCOTTSDALE, ARIZONA 85251-3693

32. The Debtor requires the use of the proceeds from its accounts receivable and from the operation of the Hotel in order to pay its ordinary and necessary operating expenses, payroll, and other general and administrative expenses (collectively, the "Expenses") and to preserve the going concern value of the Debtor's business.

33. Attached to the Cash Collateral Motion as Exhibit "A" is a projection of the Debtor's anticipated post-petition revenues and its anticipated Expenses for the period from April 22, 2021 through September 30, 2021 (the "Budget"). The Budget is incorporated herein by this reference.

34. It is necessary for the Debtor to continue using the revenues and income from its operations, including the proceeds from the current accounts receivable and operations (collectively, the "Revenues"), in order to continue its operations, pay its employees and vendors, and to pay taxes.

35. The Debtor's continued existence as an operating company and going concern is absolutely necessary to ensure the Debtor's successful reorganization. Without the use of the Revenues to pay the Expenses, the Debtor would cease operations and its assets would be liquidated. No creditors other than CIT and, perhaps, other secured creditors, would benefit from such a liquidation.

36. Indeed, not allowing the Debtor the opportunity to operate the Hotel through the incipient recovery of the hospitality and travel industry, after the devastating affects of the COVID-19 pandemic that decimated the hotel industry and hotel values, would be inequitable and would be detrimental to all creditors, employees, vendors, and other constituents in this case.

37. The Debtor's business operations, and its prospects for a successful reorganization, will suffer immediate and irreparable harm if the Debtor is not allowed to use the Revenues to pay the Expenses.

38. Accordingly, pursuant to the Cash Collateral Motion, the Debtor proposes to use the Revenues generated by the Debtor's operations to pay the Expenses in accordance with the Budget through June 30, 2021, with a ten percent (10%) variance permissible on a

SACKS TIERNEY P.A., ATTORNEYS
4250 NORTH DRINKWATER BOULEVARD
FOURTH FLOOR
SCOTTSDALE, ARIZONA 85251-3693

total budget basis.

39. In addition to the ordinary and necessary operating expenses of the Hotel, the real property taxes for the second half of 2020, in the amount of approximately $56,000 (the "Real Property Taxes"), are due and payable on May 1, 2021. The failure to pay the Real Property Taxes could result in the accrual of significant interest. Accordingly, pursuant to the Cash Collateral Motion, the Debtor requests that the Court allow the Debtor to use cash collateral to pay the Real Property Taxes.

40. Further, the Debtor has incurred, and charged its guests and customers for, pre-petition sales taxes that are payable at the end of each month. The Debtor has retained sufficient funds to pay the accrued pre-petition sales taxes (the "Sales Taxes"). Although the funds received and retained by the Debtor to pay the Sales Taxes are, arguably, held in trust for the taxing authorities, the Debtor, out of an abundance of caution, nevertheless seeks authority to pay the pre-petition Sales Taxes as they come due.

41. The Debtor submits that any creditors asserting a lien in the Revenues, including CIT (collectively, the "Secured Creditors"), are and will be adequately protected by the value generated through the Debtor's continued post-petition operations and a replacement lien (with the same validity, extent, and priority as their respective pre-petition liens) in post-petition Revenues to the extent that their respective interests in the pre-petition Revenues are diminished.

**Facts Relating to the Motion to Retain Hotel Operator**

42. Ledgestone is not affiliated, in any way, with the Debtor, other than through the Management Agreement. The terms and conditions of the Management Agreement are reasonable and consistent with industry standards. The Debtor's continued retention of Ledgestone is in the best interests of the Debtor, the Debtor's estate, and the Debtor's creditors.

43. Ledgestone and the Debtor entered into the current Management Agreement in February 2020 to reflect certain changes in their arrangement and to provide for a term of up to three years.

SACKS TIERNEY P.A., ATTORNEYS
4250 NORTH DRINKWATER BOULEVARD
FOURTH FLOOR
SCOTTSDALE, ARIZONA 85251-3693

44. Since its initial retention by the Debtor in February 2019, Ledgestone has professionally, efficiently, and properly operated and managed the Hotel pursuant to the terms and requirements of the Management Agreement.

45. Ledgestone has also worked with and assisted the Debtor in connection with its forbearance agreement with the Franchisor, its agreement with ADOR concerning the delinquent sales taxes, and its negotiations with CIT regarding the defaults.

46. Ledgestone has extensive and intimate knowledge of the Debtor's business, financial affairs, operations, and capital and debt structure.

47. Given its management role for the past two years, Ledgestone has been instrumental in assisting the Debtor and its bankruptcy counsel in preparing the Debtor for this bankruptcy filing, including the preparation of first day motions, schedules of assets and liabilities and other necessary administrative matters in the bankruptcy case.

48. The Debtor trusts Ledgestone and its ability to continue managing and operating the Hotel in a professional and efficient manner during the course of this Chapter 11 proceeding.

49. Ultimately, Ledgestone is well qualified, well positioned, and uniquely suited to continue operating and managing the Hotel.

50. Accordingly, the Debtor submits that its retention of Ledgestone to manage and operate the Hotel is necessary and appropriate and in the best interests of the Debtor, its bankruptcy estate, its creditors, and all other parties in interest.

**Facts Relating to the Wage Motion**

51. As of the Petition Date, the Debtor had eighteen employees ("Employees"), although the number of employees fluctuates with the seasons and general employee attrition.

52. The Debtor's payroll system is based upon bi-weekly pay periods, which end on the first and fifteenth of each month.

53. Payments to the Employees are generally made on the fifth and twentieth day of each month for the prior two week period.

SACKS TIERNEY P.A., ATTORNEYS
4250 NORTH DRINKWATER BOULEVARD
FOURTH FLOOR
SCOTTSDALE, ARIZONA 85251-3693

54. The Debtor last paid its employees on April 20, 2021 for the period from April 1, 2021 through April 15, 2021.

55. The Debtor's next payroll is due on May 5, 2021 for the period from April 16, 2021 through April 30, 2021.

56. All payroll funds are disbursed to the Employees directly from a payroll account.

57. As part of their compensation, and in accordance with Arizona law and the Debtor's established policies, the Employees also accrue paid vacation and sick time off ("PTO").

58. PTO is only honored on an ongoing basis, and, unless otherwise required by law, is not redeemable for cash.

59. As of the Petition Date, there existed approximately $8,668.68 in earned but unpaid wages owing to the Employees for the period from April 16, 2021 through the Petition Date.

60. A list of the Employees, showing the amount of payment to which each is estimated to be entitled in connection with his or her pre-petition employment, is attached to the Wage Motion as Exhibit "A."

61. Additionally, as of the Petition Date, some paychecks to Employees have not yet been cashed and had not cleared the Debtor's pre-petition bank accounts at the time such accounts were closed. The Debtor estimates that the amount of those uncashed paychecks is less than $5,000.

62. As of the Petition Date, the Employees, collectively, have accrued PTO in an amount to be determined.

63. The greatest combined amount of earned pre-petition wages due to any individual is approximately $1,333.50.

64. The Debtor believes that if the Employees are not promptly and fully paid for their pre-petition employment, a meaningful number of Employees will terminate their

SACKS TIERNEY P.A., ATTORNEYS
4250 NORTH DRINKWATER BOULEVARD
FOURTH FLOOR
SCOTTSDALE, ARIZONA 85251-3693

employment with the Debtor, and that any such termination would materially harm the Debtor's operations.

66. Payment of the employees' pre-petition wages is crucial to the maintenance of the Debtor's workforce and therefore a prerequisite to the Debtor's ability to seamlessly and effectively transition into bankruptcy.

I declare under the penalty of perjury that the foregoing is true and correct to the best of my knowledge.

DATED: April 28, 2021.

S. S. Khangura
Sukhbinder Khangura

SACKS TIERNEY P.A., ATTORNEYS
4250 NORTH DRINKWATER BOULEVARD
FOURTH FLOOR
SCOTTSDALE, ARIZONA 85251-3693



3012370.v1