Randy Nussbaum (SBN 006417)
Randy.Nussbaum@SacksTierney.com
Philip R. Rudd (SBN 014026)
Philip.Rudd@SacksTierney.com
Sierra M. Minder (SBN 035795)
Sierra.Minder@SacksTierney.com
**SACKS TIERNEY P.A.**
4250 N. Drinkwater Blvd., 4th Floor
Scottsdale, AZ 85251-3693
Telephone: 480.425.2600
Facsimile: 480.970.4610
*Proposed Attorneys for Debtor*

# IN THE UNITED STATES BANKRUPTCY COURT
# THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re:<br><br>CRESTWOOD HOSPITALITY, LLC,<br><br>Debtor. | Chapter 11 Proceedings<br><br>Case No. 4:21-bk-03091-BMW<br><br>**DECLARATION OF MICHAEL HARRIS** |

I, Michael Harris, hereby declare under penalty of perjury of the laws of the United States of America, as follows:

1. I am an adult resident of Maricopa County, Arizona.

2. I am a founder, Vice President and Partner of Ledgestone Hospitality, LLC ("Ledgestone").

3. I am authorized and competent to make this declaration in support of Crestwood Hospitality, LLC's ("Debtor") *Motion to Retain Ledgestone Hospitality, LLC as Manager and Operator of Hotel* ("Motion to Retain Hotel Operator").

4. The statements contained herein are accurate to the best of my knowledge and, unless otherwise indicated, are based upon my personal knowledge. Any legal conclusions contained herein are made based upon my understanding of the law and pertinent circumstances.

5. I have read and am familiar with the Motion to Retain Hotel Operator and its contents, and I assisted in the preparation of such motion.

6. I am also familiar with the Debtor's (a) *Motion for Order Authorizing Debtor's Use of Cash Collateral to Pay Operating Expenses and Pre-Petition Real Property and Sales Taxes* ("Cash Collateral Motion") and (b) *Motion for Order Authorizing Debtor to Pay Pre-Petition Wages* ("Wage Motion"), and I assisted in the preparation of those motions.

7. Ledgestone currently manages and operates the Debtor's hotel known as the Holiday Inn Express at Tucson Mall, located generally at 620 E. Wetmore Rd., Tucson, Arizona (the "Hotel"), pursuant to the *Management Agreement* dated February 12, 2020 ("Management Agreement") between the Debtor and Ledgestone. A copy of the Management Agreement is attached to the Motion to Retain Hotel Operator as Exhibit "A."

8. Ledgestone is not affiliated, in any way, with the Debtor, other than through the Management Agreement.

9. Ledgestone has extensive hotel management experience and expertise and has been managing and operating the Hotel for the Debtor since February 2019.

10. The terms and conditions of the Management Agreement are reasonable and consistent with industry standards.

**General Background**

11. On April 23, 2021 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Arizona.

12. I understand that the Debtor owns the Hotel.

13. The Hotel has 105 guest rooms, three corporate meeting rooms, a business center, outdoor heated pool, fitness center and other guest amenities.

14. As of the Petition Date, the Debtor had eighteen employees, although the number of employees fluctuates with the seasons and general employee attrition.

15. Historically, the Debtor has operated profitably. In fact, in 2019, under Ledgestone's management, the Debtor had revenues of approximately $3.2 million (approximately $400,000 more than in 2018) and EBITDA of approximately $1 million.

16. However, in 2017 and 2018, the previous management company that operated the Hotel for the Debtor failed to file returns for, and to pay, Arizona State and City of Tucson sales taxes resulting in a tax liability to the State of Arizona in excess of $1 million and a tax liability to the City of Tucson of approximately $87,500.

17. In February 2019, after discovering the failure to file sales tax returns, the Debtor removed that previous management company and retained Ledgestone to manage the Hotel. Ledgestone continues to manage the Hotel and has timely filed returns for, and paid, all Arizona state and City of Tucson sales taxes.

18. Ledgestone and the Debtor entered into the current Management Agreement in February 2020 to reflect certain changes in their arrangement and to provide for a term of up to three years.

**Ledgestone's Experience and Expertise**

19. Ledgestone was formed in, and has been expertly managing hotels since, 2009. A copy of Ledgestone's presentation deck describing Ledgestone's history, team, services, and experience is attached to the Motion to Retain Hotel Operator as Exhibit "B" and is incorporated herein by this reference.

20. Ledgestone currently operates 30 hotels and has been recognized as an award-winning hospitality management company by Hilton, IHG, Marriott, Wyndham, and others. Indeed, demonstrating Ledgestone's capabilities with this particular Franchisor, Ledgestone hotels are the recipients of the coveted IHG Quality Excellence Award, 5 of 5 Metrics Award and recently won the IHG Newcomer of the Year 2020 Award with its Lake Havasu Holiday Inn Express. The Newcomer Award signifies a location as one of the best properties to join the IHG system within the last year.

21. While Ledgestone is based out of Chanhassen, Minnesota, a suburb of Minneapolis, it has a western regional office in Phoenix/Chandler, Arizona, with three

Regional Directors operating out of Phoenix. In fact, Ledgestone manages a total of eight hotels in Arizona, including the Hotel and three other hotels owned by entities associated with the Debtor's owners and four other hotels owned by three other owners.

22. Prior to forming Ledgestone in 2009, Kenneth Garvin ("Garvin") and I headed the management division for a small national hotel brand (204 hotels) out of Minneapolis, MN for a little over a decade.

23. Garvin and I have over 60 years of combined hospitality management experience.

24. Over the past 30 years, Garvin and I, and other professionals employed by Ledgestone, have amassed experience on all sides of the hospitality industry including as franchisees, franchisors, consultants, and management companies.

25. While Ledgestone approaches management from a return-on-investment perspective, its also delivers award-winning brand results. It has a history of significantly increasing both revenues and profitability.

26. Further, Ledgestone has extensive experience managing financial and operational turnarounds in the hospitality industry, including managing financially troubled hotels and experience assisting lenders with troubled assets, CMBS loans, workouts, and receiverships. Ledgestone has also been retained by national hotel lenders for underwriting purposes.

27. Ledgestone is an approved management company for almost all national hotel brands including IHG, Hilton, Marriott, Choice, Country Inn & Suites, Wyndham, Best Western, etc.

28. Ledgestone follows strict USALI accounting practices, and directly employs a CPA (inactive) and several accountants in its offices.

29. Ledgestone has established a national footprint with properties from California to Wisconsin and has recently won top Hilton, IHG and Wyndham awards for hotels in its portfolio.

30. Ledgestone is a complete turn-key management company. Its principals are

experts in Operations, Sales & Marketing, Accounting, Guest Satisfaction, Revenue Optimization, Food & Beverage, and every other facet of professional hospitality management, including the capability to fully implement any brand required PIP's (Property Improvement Plan), where required.

31. I am the primary point of contact for the Debtor with respect to the Hotel.

32. As vice president, co-founder, partner, and head of operations for Ledgestone, I live in Chandler, Arizona.

33. In addition to managing and operating the Hotel for the Debtor, Ledgestone manages and operates three other hotels in Arizona owned by entities affiliated with the Debtor.

34. Having operated and managed the Hotel for over two years, Ledgestone and I are very familiar with the Hotel and its operations and with the Debtor and its financial issues and challenges.

**The Management Agreement Between Ledgestone and the Debtor**

35. The current Management Agreement between Ledgestone and the Debtor was entered into in February 2020.

36. Generally, it provides that Ledgestone shall have the "full power, authority, discretion and control in all matters relating to the management, operation and maintenance of the [Hotel] <u>subject to Owner prior approval</u> . . . ." Management Agreement at § 1.1 (emphasis added).

37. The initial term of the Management Agreement is one year with an automatic renewal for an additional two years. Management Agreement at § 3.1.

38. Pursuant to the Management Agreement, Ledgestone is entitled to be paid a monthly management fee equal to the sum of two and one-half present of the Room Revenue (as that term is defined in the Management Agreement) for the preceding month plus reimbursement of direct expenses incurred by Ledgestone for any third-party payroll processing services and yearly accounting licensing software fees. Management Agreement at § 4.

39. Notably, the industry standard for hotel management fees is between 3% and 4% of room revenue plus additional accounting, revenue management and other fees. Ledgestone's fee is reduced due to its management and operation of four hotels owned by entities associated with the Debtor's owners.

40. Among other duties, Ledgestone is required to submit to the Debtor's owners an annual plan for the Hotel which includes an operating budget, capital expenditures budget and marketing plan. Management Agreement at § 5.1.

41. Additionally, pursuant to the Management Agreement, Ledgestone is responsible for, at the Debtor's expense, among other things, the maintenance and repair of the Hotel; the replacement of equipment, furniture, furnishings, and improvements relating to the Hotel; entering into service and vendor contracts for goods and services with third parties relating to the operation of the Hotel; applying for, obtaining and maintaining any necessary licenses and permits for the operation of the Hotel; compliance with governmental laws, rules and regulations; compliance with Franchisor requirements; the selection, training, supervision, and termination of employees; and maximizing profits for the Debtor. Management Agreement at §§ 5 and 7.

42. Pursuant to the Management Agreement, the Debtor is obligated to provide, at its expense, among other things, operating supplies for the management and operation of the Hotel, and is required to pay all costs of maintaining, operating, improving, and insuring the Hotel. Management Agreement at §§ 6 and 8.

43. Moreover, pursuant § 6.5 of the Management Agreement, the Debtor has agreed to indemnify Ledgestone and its managers, principals, and employees, and hold them harmless from certain claims and liabilities. Specifically, § 6.5 of the Management Agreement provides as follows:

> 6.5 Indemnification. The Owner hereby agrees to indemnify and hold the Operator, and its managers, principals and employees of the Operator, harmless from any and all costs, expenses, attorneys' fees, suits, liabilities, judgments, damages and claims in connection with the management, maintenance and/or operation of the Property (including the loss of use hereof following any damage, injury or destruction), arising from any cause

other than for fraud, negligence intentional misconduct or a breach of any provision of this Agreement on the part of the Operator or such other persons and entities. The Operator shall indemnify and hold harmless Owner and its principals, managers and employees from any and all costs, expenses, attorneys' fees, suits, liabilities, judgments, damages and claims in connection with the management, maintenance and/or operation of the Property (including the loss of use thereof following any damage, injury or destruction), arising from any cause for which Operator's actions are fraudulent, negligent, intentional misconduct or a breach of any provision of this Agreement. The provisions of this section shall survive any expiration or termination and shall be binding upon Owner, its successors and assigns, including any successor or assign who becomes the owner of the Property after the effective date of any such expiration or termination.

44. The Management Agreement specifically provides that the relationship between the Debtor and Ledgestone is that of agent/representative and principal, and that there is no partnership or joint venture relationship between the parties. Management Agreement at §§ 12.2 and 12.3.

### Ledgestone's Performance Under the Management Agreement

45. Since its initial retention by the Debtor in February 2019, Ledgestone has professionally, efficiently, and properly operated and managed the Hotel pursuant to the terms and requirements of the Management Agreement.

46. Ledgestone has also worked with and assisted the Debtor in connection with its forbearance agreement with the Franchisor, its agreement with ADOR concerning the delinquent sales taxes, and its negotiations with CIT regarding the defaults.

47. Ledgestone has extensive and intimate knowledge of the Debtor's business, financial affairs, operations, and capital and debt structure.

48. Given its management role for the past two years, Ledgestone has been instrumental in assisting the Debtor and its bankruptcy counsel in preparing the Debtor for this bankruptcy filing, including the preparation of first day motions, schedules of assets and liabilities and other necessary administrative matters in the bankruptcy case.

49. Ultimately, Ledgestone is well qualified, well positioned, and uniquely suited to continue operating and managing the Hotel.

I declare under the penalty of perjury that the foregoing is true and correct to the best of my knowledge.

DATED: April 28TH, 2021.

_____
Michael Harris

SACKS TIERNEY P.A., ATTORNEYS
4250 NORTH DRINKWATER BOULEVARD
FOURTH FLOOR
SCOTTSDALE, ARIZONA 85251-3693